UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISA STARRATT, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>FERMENTED SCIENCES, INC.,<br><br>Defendant. | Case No. 22-cv-03895-HSG<br><br>**ORDER DENYING MOTION TO DISMISS**<br><br>Re: Dkt. No. 16 |

Pending before the Court is Defendant Fermented Sciences, Inc.'s motion to dismiss. Dkt. No. 16. The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b). For the reasons detailed below, the Court **DENIES** the motion.

I.   **BACKGROUND**

Plaintiffs Lisa Starratt and Thomas Simmons allege that the labels and marketing for Defendant's alcoholic beverage, Flying Embers Hard Seltzer, are misleading and unlawful. *See* Dkt. No. 1 ("Compl."). Plaintiffs allege that Defendant has fortified its seltzer with vitamin C and probiotics "to distract from the severe harm that may occur from alcohol consumption." *See id.* at ¶¶ 21, 31. Defendant promotes its hard seltzer as containing "ANTIOXIDANT VIT C + LIVE PROBIOTICS" and states that it is "BREWED WITH SUPERFRUITS." *See id.* at ¶¶ 4, 16–19, 31, 39. However, Plaintiffs contend that alcohol consumption interferes with nutrient absorption and kills probiotics, so consumers do not receive the benefits of either the vitamin C or the probiotics. *See id.* at ¶¶ 35–36, 38. Plaintiffs further argue that Defendant's labeling violates the FDA's "Fortification Policy" under 21 C.F.R. § 104.20, and by extension, California's Sherman Food Drug & Cosmetic Law (the "Sherman Law"), which adopts the same federal labeling

requirements. *See id.* at ¶¶ 41–57; *see also* Cal. Health & Safety Code § 110100 ("All food labeling regulations and any amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993, or adopted on or after that date shall be the food labeling regulations of this state.").

Plaintiffs bring causes of action for violations of California's Consumer Legal Remedies Act ("CLRA"), Unfair Competition Law ("UCL"), and False Advertising Law ("FAL"), as well as for fraud and unjust enrichment. *Id.* at ¶¶ 89–135. They also seek an injunction prohibiting Defendant from continuing to engage in its allegedly deceptive and illegal practices. *See id.* at ¶¶ 108, 130. Defendant argues that there is no deception, and moves to dismiss the complaint in its entirety. Dkt. No. 16.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Rule 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Rule 9(b) imposes a heightened pleading standard where fraud is an essential element of a claim. *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."); *see also Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003). A plaintiff must identify "the who, what, when, where, and how" of the alleged conduct, so as to provide defendants with sufficient information to defend against the charge. *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997). However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P.

1  Rule 9(b).

2  In reviewing the plausibility of a complaint, courts "accept factual allegations in the
3  complaint as true and construe the pleadings in the light most favorable to the nonmoving party."
4  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nevertheless,
5  courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of
6  fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir.
7  2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

## III. DISCUSSION

### A. Article III Standing

As an initial matter, Defendant contends that Plaintiffs lack Article III standing to pursue injunctive relief. Dkt. No. 16 at 5–7. Defendant urges that Plaintiffs may simply look at the product label to avoid being misled in the future. *Id.*

To have standing to seek injunctive relief under Article III, a plaintiff must "demonstrate a real and immediate threat of repeated injury in the future." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (quotation omitted). So once a plaintiff has been wronged, they are entitled to injunctive relief only if they can show that they face a "real or immediate threat that [they] will again be wronged in a similar way." *Mayfield v. United States*, 599 F.3d 964, 970 (9th Cir. 2010) (quotation omitted). In the context of false advertising cases, the Ninth Circuit has confirmed "that a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969 (9th Cir. 2018). A plaintiff may establish the risk of future harm in two ways: (1) "the consumer's plausible allegations that [they] will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although [they] would like to"; or (2) "the consumer's plausible allegations that [they] might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as [they] may reasonably, but incorrectly, assume the product was improved." *Id.* at 969–70.

Here, Plaintiffs allege that they were deceived by the labeling on the hard seltzer because

3

they believed the vitamin C and probiotics "would provide physical health benefits." *See* Compl. at ¶¶ 68–69, 74–75. They also allege that they "desire to purchase alcohol products again, including those marketed and sold by Defendants"; that they "would likely purchase [Defendant's] Products again in the future" if those Products "were reformulated to remove the nutrients, and labeled without the unlawful nutrient claims"; and that they "regularly visit[] stores where the Products and other hard seltzers are sold." *See id.* at ¶¶ 72, 78. However inartful these allegations may be, the Court finds that when viewed in the light most favorable to Plaintiffs—as they must be at this stage—they are sufficient to establish a risk of future harm. Plaintiffs have alleged that they cannot rely on the product's labels when shopping for hard seltzer, and thus cannot purchase the products although they would like to purchase them in future if properly labeled. *Accord Marek v. Molson Coors Beverage Co.*, 580 F. Supp. 3d 848, 863 (N.D. Cal. 2022); *Nacarino v. Chobani, LLC*, No. 20-CV-07437-EMC, 2022 WL 344966, at *10–11 (N.D. Cal. Feb. 4, 2022).

### B. Equitable Relief

Defendant next argues that Plaintiffs cannot seek equitable relief under the CLRA, UCL, or FAL because they do not allege that their other legal remedies are inadequate. *See* Dkt. No. 16 at 7–9. Defendant relies on *Sonner v. Premier Nutrition Corp.*, in which the Ninth Circuit upheld the dismissal of claims for restitution because the plaintiff also had asserted a claim for money damages under the CLRA. 971 F.3d 834, 843–44 (9th Cir. 2020). Defendant points out that here too Plaintiffs are seeking monetary damages under the CLRA. *See* Compl. at ¶ 96; *see also id.*, Prayer for Relief (seeking compensatory damages).

But the Ninth Circuit in *Sonner* repeatedly highlights the odd procedural posture of that case: "On the brink of trial after more than four years of litigation, [the plaintiff] voluntarily dismissed her sole state law damages claim and chose to proceed with only state law equitable claims for restitution and injunctive relief" for the strategic purpose "to try the class action as a bench trial rather than to a jury." *Sonner*, 971 F.3d at 837–38. The plaintiff continued to seek the same amount of monetary damages, just as equitable restitution rather than as damages. *Id.* at 837, 844. The district court rejected this ploy, and dismissed the plaintiff's claims for restitution because damages had been available. *Id.*

4

In any event, and as this Court has previously explained, *Sonner* "did not purport to disturb the well-established rule that equitable and damages claims may coexist when they are based on different theories." *Brown v. Natures Path Foods, Inc.*, No. 21-CV-05132-HSG, 2022 WL 717816, at *6, n.15 (N.D. Cal. Mar. 10, 2022). Plaintiffs explicitly allege that equitable relief is necessary in this case because they "have no adequate remedy at law to stop Defendant continuing [its] practices" and to "ensure future compliance . . . ." *See* Compl. at ¶¶ 94, 108. At this stage, Plaintiffs have thus alleged "sufficient facts from which the Court can reasonably infer that [Defendant's] conduct exposes Plaintiffs to prospective injuries for which remedies at law would be inadequate." *See Brown*, 2022 WL 717816, at *6, n.15.

### C. UCL, FAL, and CLRA Claims

As explained above, Plaintiffs' claims turn on the theory that the hard seltzer labels and advertising are unlawful because they violate the FDA's Fortification Policy and the Sherman Law, and are misleading because the added vitamin C and probiotics do not provide actual health benefits to the consumer. *See generally* Compl. Defendant raises several arguments in response, including that (1) Plaintiffs' UCL claim is preempted to the extent it relies on the Fortification Policy; (2) Plaintiffs' claims rely on a strained reading of the Fortification Policy, and its labels are not unlawful; and (3) the product labels are accurate because the hard seltzer does in fact contain vitamin C and probiotics, and would not deceive a reasonable consumer. Dkt. No. 16 at 9–20.

#### i. "Unlawful" UCL Claim

The UCL prohibits business acts or practices that are (1) fraudulent, (2) unfair, or (3) unlawful. *See* Cal. Bus. & Prof. Code § 17200. As relevant here, the "unlawful" prong of the UCL incorporates other laws and treats violations of those laws as unlawful business practices independently actionable under state law. *Chabner v. United Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000) (citing *Cel-Tech Commc'ns Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (Cal. 1999)). Plaintiffs' UCL unlawful prong claim alleges that Defendant violated the Sherman Law, which adopts the FDA regulations, by fortifying its hard seltzer with vitamin C. *See* Compl. at ¶¶ 52–53. Defendant argues that Plaintiffs have failed to allege a claim under the unlawful prong of the UCL because the claim is preempted and, in any event, the labels do not

violate any FDA regulations.

### a. Implied Preemption

Defendant argues that Plaintiffs' attempt to enforce FDA regulations through their UCL claim is impliedly preempted under *Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341, 353 (2001). *See* Dkt. No. 16 at 19–20. However, the Court has recently rejected this same argument, and sees no reason in this case to deviate from its prior reasoning. The Court therefore adopts its prior reasoning in its entirety. *See Brown*, 2022 WL 1471454, at *6–8; *accord Marek*, 580 F. Supp. 3d at 858. Plaintiffs' claims based on violations of the Sherman Law are not subject to implied preemption. *See* Compl. at ¶ 119.

### b. Fortification Policy

More substantively, Defendant argues that the FDA regulations do not prohibit manufacturers from fortifying alcoholic beverages—in this case, by adding vitamin C—but rather only prohibit them from making certain content claims about such added nutrients.[1] *See* Dkt. No. 16 at 14–18.

The Fortification Policy states:

> The addition of nutrients to specific foods can be an effective way of maintaining and improving the overall nutritional quality of the food supply. However, random fortification of foods could result in over- or underfortification in consumer diets and create nutrient imbalances in the food supply. *It could also result in deceptive or misleading claims for certain foods.*

21 C.F.R. § 104.20(a) (emphasis added). Consequently, the FDA "does not encourage indiscriminate addition of nutrients to foods, nor does it consider it appropriate to fortify fresh produce; meat, poultry, or fish products; sugars; or snack foods such as candies and carbonated beverages." *Id.* The policy identifies four narrow circumstances in which adding nutrients to a food is appropriate: (1) to correct a dietary insufficiency recognized by the scientific community; (2) to restore nutrients lost in storage, handling, or processing; (3) to balance vitamin, mineral and protein content in proportion to total calories; and (4) to avoid nutritional inferiority when

---

[1] The parties appear to agree that the addition of probiotics to the product does not violate the Fortification Policy or Sherman Law. *Compare* Dkt. No. 16 at 16–17, *with* Dkt. No. 22 at 7, n.2.

6

replacing a traditional food. *See* 21 C.F.R. § 104.20(b)–(e). The FDA has also issued guidance stating that "[u]nder our fortification policy, we do not consider it appropriate to add vitamins and minerals to alcoholic beverages." *See Guidance for Industry: Questions and Answers on FDA's Fortification Policy* (Nov. 2015), https://www.fda.gov/media/94563/download.

But Defendant states that the Fortification Policy is only binding if manufacturers make certain nutrient content claims about their products. *See* Dkt. No. 16 at 15–16. Plaintiffs appear to agree with this limitation. *See* Dkt. No. 22 at 9. Under 21 C.F.R. § 101.54, "[a] relative claim using the terms 'more,' 'fortified,' 'enriched,' 'added,' 'extra,' and 'plus' may be used on the label or in labeling of foods to describe the level of protein, vitamins, minerals, dietary fiber, or potassium . . . provided that . . . fortification is in accordance with [the Fortification Policy]." 21 C.F.R. § 101.54(e)(i)–(ii). Defendant argues that it does not use any of these terms to describe the level of vitamin C in its hard seltzer, and therefore is not required to comply with the Fortification Policy. *See* Dkt. No. 16 at 16–18. As this Court has explained previously, the regulations distinguish between statements that characterize the *level* of nutrients in products and "statements that merely signal the *existence* of [the nutrient]." *See Vassigh v. Bai Brands LLC*, No. 14-CV-05127-HSG, 2015 WL 4238886, at *7 (N.D. Cal. July 13, 2015) (emphasis added). Statements about the mere existence of nutrients are not regulated.

Plaintiffs argue that when read in context, the "+" symbol on the hard seltzer label "is a synonym for 'added' or 'plus' because it signifies the addition of the nutrient" to the product. *See* Compl. at ¶ 52; *see also* Dkt. No. 22 at 9–11. Even though it appears after rather than before the words vitamin C, it still "signif[ies] the addition of both Vitamin C and live probiotics to the beverage." *See* Dkt. No. 22 at 10. Plaintiffs thus urge that this language falls within the regulated language under § 101.54. Defendant, for its part, urges that the "+" symbol on its front label, which reads "antioxidant vit C + live probiotics," is simply "a stylistic stand-in for an ampersand" rather than a "plus" claim. *See* Dkt. No. 16 at 16. In other words, Defendant argues that the label accurately touts that the product *contains* vitamin C, but that this is not a nutrient content claim because it does not use any of the words specifically identified in the regulation.

The Court has previously explained that statements may still be nutrient content claims

1  under § 101.54 "without using the exact words identified in the regulation." *See Vassigh*, 2015
2  WL 4238886, at *7.  "The touchstone inquiry is whether the statement either expressly or
3  implicitly characterizes the level of a nutrient in the product." *Id.*  And in a similar case involving
4  the application of the Fortification Policy to a hard seltzer product, the defendant urged that the
5  policy did not apply because the label "accurately indicate[d] the product is 'with antioxidant
6  Vitamin C,'" and did not use the terms "added" or "plus." *Marek*, 580 F. Supp. 3d at 858.  In
7  *Marek*, Judge Orrick found that at least at the motion to dismiss stage, the plaintiffs had
8  adequately alleged impermissible fortification under the policy. *Id.*

9  The Court finds that this reasoning applies equally to the use of the "+" symbol on
10 Defendant's products.  It is not the Court's present role to make factual determinations about the
11 correct or most likely interpretation of the labels.  At this stage, Plaintiffs have plausibly alleged
12 that the Fortification Policy is binding as to Defendant's hard seltzer and that Defendant has
13 violated it. *Accord Marek*, 580 F. Supp. 3d at 859.  Whether Defendant in fact violated the policy
14 is better decided on a full factual record.

### ii. Reasonable Consumer Test

16 The parties agree that the UCL, CLRA, and FAL claims are all governed by the
17 "reasonable consumer" test. *See Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008).
18 "Under the reasonable consumer test, [Plaintiffs] must show that members of the public are likely
19 to be deceived." *Id.* (quotations omitted).  "'Likely to deceive' implies more than a mere
20 possibility that the advertisement might conceivably be misunderstood by some few consumers
21 viewing it in an unreasonable manner." *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496,
22 508 (Cal. Ct. App. 2003).  Rather, the test is whether "it is probable that a significant portion of
23 the general consuming public or of targeted consumers, acting reasonably in the circumstances,
24 could be misled." *Id.*  "California courts . . . have recognized that whether a business practice is
25 deceptive will usually be a question of fact." *Williams*, 552 F.3d at 938.  It is thus a "rare
26 situation" when "granting a motion to dismiss [a UCL, CLRA, or FAL claim] is appropriate." *Id.*
27 at 939.

28 Here, Defendant suggests that a reasonable consumer would not be misled into believing

that they would receive health benefits from the vitamin C or probiotics in the hard seltzer. *See* Dkt. No. 16 at 10–14. But Plaintiffs allege that Defendant prominently displays that its product contains vitamin C and probiotics, and does so "to distract from the severe harm that may occur from alcohol consumption." *See* Compl. at ¶¶ 21, 31. Plaintiffs further allege that "isolated antioxidants" such as vitamin C when taken alone do not have the same health benefits as antioxidants in fruits and vegetables. *Id.* at ¶ 32. They also explain that alcohol consumption interferes with nutrient absorption and kills probiotics, so consumers could not receive any benefits from either the vitamin C or the probiotics. *See id.* at ¶¶ 35–36, 38.

Defendant suggests that Plaintiffs do not provide adequate scientific support for these assertions, such as the "rate at which alcohol allegedly kills probiotics or whether it kills all probiotics" or details from Plaintiffs' own product testing. Dkt. No. 26 at 6–7. But this level of detail is not required at this stage. Defendant may disagree with the veracity of these allegations, but it will be able to probe Plaintiffs' theory and offer its own experts during discovery. Plaintiffs have alleged sufficient facts at this stage to support an inference that a reasonable consumer would be misled by the labels at issue in this case.[2]

### D. Unjust Enrichment

Lastly, Defendant challenges Plaintiffs' unjust enrichment claim, arguing that it is not a separate cause of action. Dkt. No. 16 at 20 (citing *DeHavilland v. FX Networks, LLC*, 21 Cal. App. 5th 845, 870 (Cal. Ct. App. 2018)). Under California law, "[u]njust enrichment is not a cause of action." *DeHavilland*, 21 Cal. App. 5th at 870. However, rather than dismiss an unjust enrichment claim, "a court may construe the cause of action as a quasi-contract claim seeking restitution." *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (quotation omitted). Defendant fails to explain why it is inappropriate to do so here. Therefore, at this stage, the Court will construe the cause of action as a quasi-contract claim seeking restitution, as it has done in prior cases. *See, e.g.*, *In re S.C. Johnson & Son, Inc. Windex Non-Toxic Litig.*, No. 20-

---

[2] Because Plaintiffs have adequately alleged that reasonable consumers would be misled, the Court finds that they have also adequately alleged standing under the UCL and common-law fraud. *See* Dkt. No. 16 at 18–20.

CV-03184-HSG, 2021 WL 3191733, at *9 (N.D. Cal. July 28, 2021); *Smith v. Keurig Green Mountain, Inc.*, 393 F.Supp.3d 837, 848-9 (N.D. Cal. 2019).

## IV.  CONCLUSION

Accordingly, the Court **DENIES** the motion to dismiss in its entirety.  The Court further **SETS** a telephonic case management conference on February 7, 2023, at 2:00 p.m.  All counsel shall use the following dial-in information to access the call:

Dial-In:  888-808-6929;

Passcode:  6064255

For call clarity, parties shall NOT use speaker phone or earpieces for these calls, and where at all possible, parties shall use landlines.  The Court **DIRECTS** the parties to meet and confer and submit a revised joint case management statement by January 31, 2023.  The parties should be prepared to discuss how to move this case forward efficiently.

**IT IS SO ORDERED.**

Dated:    1/23/2023

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge